# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ALANKA HOUSTON-HINES, § | | |
| Individually and a/n/f CANDACE § | | |
| KINDLE-JONES, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-04-3539 | |
| § | | |
| HOUSTON INDEPENDENT SCHOOL § | | |
| DISTRICT and § | | |
| LYNSON ALEXANDER, § | | |
|     Defendants. § | | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Strike and Exclude Plaintiff's Expert Witnesses [Doc. # 41] filed by Defendant Houston Independent School District ("HISD") and the Motion to Exclude the Testimony of Plaintiff's Expert Witness [Doc. # 44] filed by Defendant Lynson Alexander ("Officer Alexander"). Plaintiff filed an untimely response to the Motions to Exclude [Doc. # 48], HISD filed a Reply [Doc. # 49], and Officer Alexander filed a Reply [Doc. # 53]. Although Plaintiff's response was untimely, it is included in the record and considered by the Court in resolving the pending motions to exclude.

The Court has carefully reviewed the parties' briefs and supporting evidence, as well as the full record in this case. Based on this review and the application of

governing legal authorities, the Court concludes that Defendants' motions to exclude Plaintiff's experts should be **granted**.

I. <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

In May 2003, Alanka Houston-Hines's daughter, Candace Kindle-Jones, was a sixth-grade student at Fondren Middle School ("Fondren"). Officer Alexander was employed as a police officer with the HISD Police Department and was assigned to Fondren.

During the morning of May 21, 2003, Assistant Principal Robert Laughlin called Officer Alexander to his office. Mr. Laughlin was suspending Candace, who had intentionally overturned a chair in Mr. Laughlin's office. Mr. Laughlin contacted Ms. Houston-Hines to come to the school to take Candace home. Mr. Laughlin reported to Officer Alexander that Ms. Houston-Hines was very angry and might cause trouble when she came to the school.

After Ms. Houston-Hines arrived at the school, Officer Alexander went to Mr. Laughlin's office, where Mr. Laughlin was explaining to Ms. Houston-Hines about Candace's suspension. Officer Alexander understood Mr. Laughlin to say that Candace would be able to make up her missed work when she returned to school after the suspension.

Ms. Houston-Hines left Mr. Laughlin's office and began telling several students in the office area that "y'all don't have to take this." Officer Alexander called his dispatcher, reported the situation, and requested back up.

Ms. Houston-Hines and Candace went to the attendance office to speak with Paquita Forward (now Paquita Crawford), the attendance clerk. Ms. Houston-Hines and Ms. Crawford were discussing Candace's make-up work and Officer Alexander repeated what he had understood Mr. Laughlin to say about Candace completing the make-up work after she returned from the suspension. Ms. Houston-Hines told Officer Alexander "evidently you've had one too many drinks. You don't know what you're talking about." *See* Houston-Hines Depo., pp. 77-78.

The accounts of what happened next vary greatly. Eventually, Officer Alexander handcuffed and arrested both Ms. Houston-Hines and Candace.

## II.   MOTION TO EXCLUDE EXPERTS

In July 2005, Plaintiff filed an Expert Designation naming as her expert witnesses Harold Simmons, a retired police officer; Dr. Victoria Sloan[1], a psychologist; HISD employees, Plaintiffs and others. In October 2005, Plaintiff filed an amended expert designation listing an HISD employee and Plaintiffs. Mr. Simmons and

---

[1] It is undisputed that Dr. Sloan did not see either Mr. Houston-Hines or her daughter, Candace, until November 9, 2005.

Dr. Sloan were not listed in the amended designation. At Plaintiff's request, the Court granted Plaintiff additional time for expert reports and designations, extending the deadline to December 14, 2005 and requiring that all records of any designated expert psychologist be produced by the December 14, 2005 deadline. The only expert report produced by Plaintiff by the December 14, 2005 deadline was the report of Mr. Simmons. Consequently, all other expert designations are stricken as unsupported by timely reports.[2]

Mr. Simmons produced a report dated December 4, 2005. *See* Report, Exh. B to HISD's Motion to Strike. In his report, Mr. Simmons states his opinion that Officer Alexander "used excessive force and was negligent in his handling of the incident involving Mrs. Alanka Houston and Candace Jones resulting in injuries and an unnecessary arrest." *Id.* at 1. Defendants challenge Mr. Simmons as unqualified to provide expert opinions in this particular case and challenge his proffered opinions as unreliable.

---

[2] Plaintiff argues that Dr. Sloan has not produced a report because she lost the records of her single November 2005 consultation with Mr. Houston-Hines and her daughter. The uncontroverted evidence establishes, however, that the records were not lost until approximately two months after the December 14, 2005 deadline. *See* Letter, Exh. A to Plaintiff's Response to Motions to Strike.

### A. Standards for Expert Testimony

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion he seeks to express. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, the district court is to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93). This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617-618 (citing *Kumho*, 526 U.S. at 147). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho*, 526 U.S. at 151. The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. To demonstrate reliability, the proponent of the expert testimony must present "some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999). The Court must consider (1) the validity of the scientific principles used; (2) the accuracy of the data relied upon by the expert; and (3) the correctness of the application of the scientific principles to the relevant data. *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 (5th Cir. 1994). Four factors to consider in determining the reliability of proffered scientific evidence are (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *Watkins*, 121 F.3d at 989 (citing *Daubert*, 509 U.S. at 593-94). This analysis, however, is a flexible one. "[N]ot every

*Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325.

Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. The Fifth Circuit, however, "has repeatedly held that Rule 704 does not allow an expert to render conclusions of law." *United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998) (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194 (5th Cir.1996)).

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore*, 151 F.3d at 276. The party offering the challenged expert opinions need not, however, prove "that the expert's testimony is correct." *Id.*

### B. Mr. Simmons's Qualifications

Defendants argue that Mr. Simmons is unqualified to serve as an expert in this case. Plaintiff responds that Mr. Simmons "is qualified to give an opinion herein because he has 29 years of law enforcement and security experience." Plaintiff's Response, p. 2.

Mr. Simmons states that he worked for twenty-nine years as a law enforcement officer. *See* Simmons's Report at 3. There is no evidence, however, that Mr. Simmons has any experience or training in the unique challenges of law enforcement in a school setting. The only information provided regarding Mr. Simmons's training is that he graduated from the "Kansas City Kansas Police Academy" in 1968. *Id.* The list of his duties as a law enforcement officer does not include any references to work in an elementary or middle school, or any other school setting. *Id.* There is no indication that Mr. Simmons has been qualified to testify as an expert witness in any litigation, let alone in a case involving law enforcement in public schools. Although Mr. Simmons could conceivably be found qualified in a different case involving routine law enforcement activities, his lack of training and experience in a school situation leaves him unqualified to serve as an expert in this particular case.

### C.   Reliability/Validity of Mr. Simmons's Opinions

Defendants challenge the reliability and validity of Mr. Simmons's opinions. The Court agrees that Mr. Simmons's opinions lack adequate indicia of reliability and validity because they are based on assumptions that are contradicted by undisputed evidence in the record. For example, Mr. Simmons criticizes Officer Alexander for failing to call for backup, yet the uncontroverted evidence in the record establishes that Officer Alexander did call for backup and that backup ultimately arrived on the scene.

An expert's self-proclaimed accuracy is insufficient. *See Kumho*, 526 U.S. at 157. As the United States Supreme Court has stated, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Because Mr. Simmons does not purport to have training or experience in public school law enforcement, and because his opinions are based on assumptions that are refuted by the record, he is not qualified to testify as an expert and his opinions are excluded as unreliable.

### III.  CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motions to Strike and Exclude Plaintiff's Experts [Docs. # 41 and # 44] are **GRANTED**.

SIGNED at Houston, Texas, this 4th of **April, 2006**.

_____
Nancy F. Atlas
United States District Judge