## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ALANKA HOUSTON-HINES, | § | |
| Individually and a/n/f CANDACE | § | |
| KINDLE-JONES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3539 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT and | § | |
| LYNSON ALEXANDER, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motions for Summary Judgment filed by

Defendant Houston Independent School District ("HISD") [Doc. # 43] and by

Defendant Lynson Alexander ("Officer Alexander") [Doc. # 45].  Plaintiff filed an

untimely response to HISD's Motion [Doc. # 51] and to Officer Alexander's Motion

[Doc. # 50].  Although Plaintiff's responses were untimely, they are included in the

record and are considered by the Court in resolving the pending motions.

The Court has carefully reviewed the parties' briefs and supporting evidence, as

well as the full record in this case.  Based on this review and the application of

governing legal authorities, the Court concludes that Defendants' motions should be

**granted**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

In May 2003, Alanka Houston-Hines's daughter, Candace Kindle-Jones, was a sixth-grade student at Fondren Middle School ("Fondren").  Officer Alexander was employed as a police officer with the HISD Police Department and was assigned to Fondren.

During the morning of May 21, 2003, Assistant Principal Robert Laughlin called Officer Alexander to his office.  Mr. Laughlin was suspending Candace, who had intentionally overturned a chair in Mr. Laughlin's office. *See* Kindle-Jones Depo., Exh. G to Alexander's Motion, pp. 19-20 (Q.  "How did you show him you were angry?"  A.  "I pushed a chair down." . . . "He asked me to pick the chair up, and I said no.")

Mr. Laughlin contacted Ms. Houston-Hines to come to the school to take Candace home.  Mr. Laughlin reported to Officer Alexander that Ms. Houston-Hines was very angry.  Mr. Laughlin told Officer Alexander that Ms. Houston-Hines might cause trouble when she came to the school.  Based on Mr. Laughlin's concerns, Officer Alexander asked the main office clerk to call him when Ms. Houston-Hines arrived.

The clerk later informed Officer Alexander that Ms. Houston-Hines had arrived and was on her way to Mr. Laughlin's office.  The clerk told Officer Alexander that Ms. Houston-Hines was very angry and that Officer Alexander should go to Mr. Laughlin's office.

Officer Alexander went to Mr. Laughlin's office, where Mr. Laughlin was explaining to Ms. Houston-Hines about Candace's suspension.  Officer Alexander understood Mr. Laughlin to say that Candace would be able to make up her missed work when she returned to school after the suspension.

Ms. Houston-Hines left Mr. Laughlin's office and began telling several students in the office area that "y'all don't have to take this.  Y'all go home, talk to your parents.  Let your parents come up here and talk to these teachers.  Because the way he is treating people is not fair."  *See* Houston-Hines Depo., Exh. F to Alexander's Motion, pp. 70-71.  It is disputed whether Ms. Houston-Hines was using profanity at this point.  Officer Alexander called his dispatcher, reported the situation, and requested back up.

After Ms. Houston-Hines and Candace retrieved a book from one of the classrooms, they went to the attendance office to speak with Paquita Forward (now Paquita Crawford), the attendance clerk.  Ms. Houston-Hines and Ms. Crawford were discussing Candace's make-up work and Officer Alexander repeated what he had understood Mr. Laughlin to say about Candace completing the make-up work after she returned from the suspension.  Ms. Houston-Hines told Officer Alexander "evidently

you've had one too many drinks.  You don't know what you're talking about."[1]  *See*
Houston-Hines Depo., pp. 77-78.

The accounts of what happened next vary greatly.  Officer Alexander states that
he told Ms. Houston-Hines that she was under arrest for interfering with school
operations and attempted to handcuff her.  *See* Alexander Aff., Exh. A to Alexander's
Motion, ¶¶ 14-15.  Ms. Houston-Hines states that Officer Alexander attacked her
without warning, pulling her by the hair and slamming her head into a brick wall.  *See*
Houston-Hines Aff., ¶ 8.  Officer Alexander and Ms. Crawford both state that Ms.
Houston-Hines was resisting.  *See* Alexander Aff., ¶ 15; Crawford Aff., Exh. C to
Alexander's Motion, ¶ 3 ("Ms. Houston-Hines wrestled with him resisting the
handcuffs"), ¶ 4 ("she kept resisting; tucking her hands behind her and wrestling to get
away").  Ms. Houston-Hines denies "resisting," but admits moving her hands around
so Officer Alexander could not get the handcuffs on her wrists.  *See* Houston-Hines
Statement to Benford, p. 6; Houston-Hines Depo., p. 231.  Ms. Houston-Hines admits
calling Ms. Crawford a "bitch" during the incident.  *See* Houston-Hines Depo., p. 89.

---

[1]      In her affidavit, Ms. Houston-Hines states under oath that she directed the comment to Ms.
Forward.  *See* Houston-Hines Affidavit, Exh. B to Plaintiff's Response, ¶ 8.  In her deposition
and in her handwritten statement to HISD investigator Benford, Ms. Houston-Hines admits
that the statement was directed to Officer Alexander.

While Officer Alexander was attempting to handcuff Ms. Houston-Hines, Candace came into the office and began grabbing and hitting the officer. *See* Kindle-Jones Depo., p. 36 (Q. "How many times did you hit him there?" A. "A few . . . more than twice"). During this time, Candace was also yelling that if she had his gun she would shoot Officer Alexander. *See id.*, p. 39. A teacher at Fondren, Roderick Martindale, came into the office, pulled Candace away from Officer Alexander, and took her into an outer office.

Officer Alexander handcuffed Ms. Houston-Hines, then handcuffed Candace. The requested back-up officers arrived and both Ms. Houston-Hines and Candace were arrested. Ms. Houston-Hines began to say that Candace was asthmatic[2] and, as a result, the school nurse came to the office to tend to Candace, who was then transported to the hospital. Ms. Houston-Hines received some scratches and bruises. Candace was sore for about a week following the incident.

## II.   ANALYSIS

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

---

[2]   Both Ms. Houston-Hines and Candace testified in deposition that Candace does not have and has never had asthma. *See* Houston-Hines Depo., p. 98; Kindle-Jones Depo., p. 41.

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant only when there is an actual controversy – "that is, when both parties have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d

854, 860 (5th Cir. 2004).  The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith  v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).

If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)).  A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Brenoettsy*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *Zucker ex rel. AIM Small Cap Growth Fund v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 847 (S.D. Tex. 2005).  "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden at summary judgment." *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996); *see Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir. 2004); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th

Cir.), *cert. denied*, 537 U.S. 950 (2002).  Likewise, "unsubstantiated or conclusory

assertions that a fact issue exists" do not meet this burden.  *Morris*, 144 F.3d at 380.

Affidavits cannot preclude summary judgment unless they contain competent and

otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical*

*Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244

F. Supp. 2d 733, 745 (S.D. Tex. 2003).  Of particular importance in this case, "it is

well settled that this court does not allow a party to defeat a motion for summary

judgment using an affidavit that impeaches, without explanation, sworn testimony."

*S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *accord Doe v.*

*Dallas Indep. Sch. Dist.*, 220 F.3d 380, 385-87 (5th Cir. 2000), *cert. denied*, 531 U.S.

1073 (2001); *Valleza v. City of Laredo*, 331 F. Supp. 2d 579, 583 (S.D. Tex. 2004).

A party's self-serving and unsupported statement in an affidavit will not defeat

summary judgment where the evidence in the record is to the contrary.  *See In re*

*Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Additionally, it is not the function of the court to search the record on the

nonmovant's behalf for evidence which may raise a fact issue.  *See Complaint of Port*

*Arthur Towing Co.*, 42 F.3d 312, 318 (5th Cir.), *cert. denied*, 516 U.S. 823 (1995);

*Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir.), *cert. denied*, 506 U.S. 825

(1992).  In the absence of proof, the Court will not assume that the nonmovant could

or would prove the necessary facts.  *See Burns v. Harris County Bail Bond Bd.*, 139

F.3d 513, 518 (5th Cir. 1998).

###    B.    <u>Officer Alexander's Motion</u>

Plaintiff alleges that Officer Alexander used excessive force against her and her

daughter.[3]  Officer Alexander moves for summary judgment both on his assertion of

qualified immunity and on the merits of Plaintiff's excessive force claim.  Plaintiff

responds that there are fact questions that must be resolved by the trier of fact, that

Officer Alexander has "failed to prove that he is shielded under qualified official

immunity" and has "failed to prove that he acted in good faith [and that] he was acting

within the scope of his authority" on the day in question.  *See* Plaintiff's Response, p. 3.

Officials sued in their individual capacities are protected by qualified immunity

unless the act violates a constitutional right clearly established at the time.  *Sanchez v.*

*Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998).  To avoid summary judgment, a plaintiff

also must present evidence to raise a fact issue "material to the resolution of the

questions whether the defendants acted in an objectively reasonable manner in view of

the existing law *and facts available to them.*"  *Lampkin v. City of Nacogdoches*, 7 F.3d

---

[3]     Plaintiff also asserts that Officer Alexander "improperly disciplined the child" and that his
"actions were without cause."  To the extent Plaintiff intended these to state separate claims
against Officer Alexander beyond the excessive force claim, the allegations fail to state an
independent claim upon which relief can be granted.

430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added). "The

doctrine of qualified immunity serves to shield a government official from civil liability

for damages based upon the performance of discretionary functions." *Cozzo v.

Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v.

Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)).

In determining whether the plaintiff has overcome the presumption of qualified

immunity, the Court must conduct a two-part test. *See, e.g., Collins v. Ainsworth,* 382

F.3d 529, 537 (5th Cir. 2004). First, the Court must decide whether the plaintiff

alleged a violation of a clearly established constitutional right. *Id.* A right is "clearly

established" if its contours are "sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S.

635, 640 (1987); *see also Collins*, 382 F.3d at 537. Second, a court must address

whether the defendant's "actions were objectively reasonable" in light of "law which

was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537.

"The touchstone of this inquiry is whether a reasonable person would have believed

that his conduct conformed to the constitutional standard in light of the information

available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307,

312 (5th Cir. 2001). "The defendant's acts are held to be objectively reasonable unless

*all* reasonable officials in the defendant's circumstances would have then known that

the defendant's conduct violated" the plaintiff's asserted constitutional or federal statutory right. *Thompson,* 245 F.3d at 457 (citations omitted) (emphasis in original).

At the summary judgment stage of a § 1983 action, a defendant asserting qualified immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity. Once the [movant] *asserts* this affirmative defense, the burden *shifts* to the plaintiff to rebut it." *Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003) (citations omitted) (emphasis in original). Contrary to Plaintiff's argument in her Response, it is Plaintiff who bears the burden of negating Defendant's claim of qualified immunity. *See Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001).

To establish a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *See Glenn*, 242 F.3d at 314. "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Id.*

In this case, Ms. Houston-Hines alleges that she sustained scratches and bruises. Candace claims that she was sore for about a week after the incident.[4]  Both claim psychological injuries, but it is undisputed that neither sought any treatment for such injuries.  There is no evidence that either of them spoke with a mental health care professional until November 2005 when they went to a single consultation with the person their attorney had previously designated as their expert witness.  The undisputed evidence in the record establishes that neither Ms. Houston-Hines nor Candace received more than *de minimis* injuries during the incident in May 2003.  Therefore, Plaintiff has not raised a genuine issue of material fact to support the first element of her excessive force claim under *Glenn*, 242 F.3d at 314..

Additionally, even were their scratches and soreness deemed to be more than *de minimis*, the undisputed evidence is that Ms. Houston-Hines was moving her hands around to prevent Officer Alexander from handcuffing her and that Candace was at a

---

[4]    Plaintiff asserts in her Response that Candace was "knocked unconscious when defendant Lynson Alexander struck her violently in the temple with his clinched fist."  Response, pp. 1-2.  There is absolutely no evidence in the record that Officer Alexander knocked Candace unconscious.  Indeed, the only evidence that Candace was unconscious at any point from any cause is Ms. Houston-Hines's statement in her deposition that she believed Candace was unconscious because she was limp when Officer Alexander was moving her after she was handcuffed.  *See* Houston-Hines Depo., pp. 222-23.  Candace testified, however, that she does not remember ever being knocked out, although she did lose her breath and "went blank" when Officer Alexander placed the handcuffs on her.  *See* Kindle-Jones Depo., pp. 38-39.  She also testified that the reason she was having trouble breathing was that she was shocked and "crying and screaming and yelling."  *Id.* at 41-42.

minimum pulling on and hitting Officer Alexander, and Candace had to be physically restrained by a male teacher at the school.  As a result, Ms. Houston-Hines's scratches and bruises and Candace's sore muscles would have occurred even with the exercise of only reasonable force under the circumstances.

Plaintiff has not presented evidence that her own or Candace's claimed injuries "resulted directly and only from the use of force that was excessive to the need" as required by *Glenn*, 242 F.3d at 314.  Plaintiff accordingly has failed to raise a genuine fact issue that Officer Alexander violated the clearly established Fourth Amendment right to be free from the use of excessive force.  Assuming that the incident occurred as described by Ms. Houston-Hines, the resulting injuries were *de minimis* and would easily have resulted from the use of no more than reasonable force.  As a result, Officer Alexander is entitled to qualified immunity and his Motion for Summary Judgment is granted.

## C.   **HISD's Motion**

Plaintiff alleges that HISD failed to "monitor and properly supervise Alexander which denied Plaintiffs equal protection[5] under the law . . . and the right to be secure

---

[5]   To the extent Plaintiff seeks to assert a separate equal protection claim, the claim fails.  In response to HISD's Interrogatory asking for "every manner" in which HISD violated Plaintiff's equal protection rights, Plaintiff answered "HISD continued to employ Officer Alexander at Fondren Middle School.  Even after other complaints had been filed against the officer.  Then on May 21, 2004, he attacked Candace, yet still had the luxury of his position (continued...)

in her person . . .."  Plaintiff also alleges that HISD "failed to properly train or supervise the disciplinary actions of Officer Alexander" and "negligently employed and retained Lynson Alexander."  The Court construes these claims, which are murky at best, as claims under 42 U.S.C. § 1983 for (1) failure to train and supervise Officer Alexander adequately and (2) negligent hiring and retention.[6]

Municipal liability under § 1983 under any theory requires an official policy that is the "moving force" behind a constitutional violation.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001).  HISD's liability for constitutional violations by its employees results if a "deprivation of constitutional rights was inflicted pursuant to official custom or policy."  *See Piotrowski*, 237 F.3d at 579.  The official policy may "be evidenced by custom, that is: . . . a persistent, widespread practice of

---

[5]   (...continued)
at Fondren Middle School, and the HISD Police Department."  This answer is consistent with Plaintiff's complaint and indicates clearly that Plaintiff's equal protection allegations relate to the inadequate training and supervision claim and the negligent hiring and retention claim, rather than to a separate equal protection claim which is unsupported by either the pleadings or the evidence in the record.

[6]   In the "Facts" section of her complaint, Plaintiff states that HISD's "failure to properly supervise" violated "the Texas Constitution, and the Texas Code of Criminal Procedure."  Plaintiff correctly does not include these Texas-based allegations as actual claims against Officer Alexander and HISD.  It is clear that there is no private right of action for monetary damages based on a violation of the Texas Constitution.  *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995).  Plaintiff has cited no legal authority for a claim in a civil lawsuit based on a violation of the Texas Code of Criminal Procedure, and this Court's research has revealed none.

City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*)).

To establish a claim under § 1983 for failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citing *inter alia Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-54 & nn. 7-8 (5th Cir. 1994) (*en banc*)).  "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* (citations omitted).  To recover under a failure to train or supervise rationale, Plaintiff must prove that HISD failed to control Officer Alexander's "known propensity for the improper use of force." *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

In this case, Plaintiff has failed to present evidence which raises a genuine issue of material fact regarding the existence of an official custom or policy, or a pattern of

constitutional violations by Officer Alexander upon which liability could be imposed on HISD.[7]   Plaintiff cites only three instances of alleged misconduct by Officer Alexander.  In July 2001, HISD noted inconsistencies between Officer Alexander's report and other accounts of an on-campus incident.   In October 2002, Officer Alexander was found to have improperly required students to pay restitution for items stolen from campus.  In June 2005, almost two years after the incident in this case, Officer Alexander was accused of working in collusion with a tow truck driver to collect fees from a car owner.  None of these instances involve the alleged use of excessive force.  There is no evidence that Officer Alexander has ever – other than in connection with the May 2003 incident in this case – been accused of using excessive force against a student or against any other person.  There is simply no showing of an official custom or policy, or any pattern of excessive force violations by Officer Alexander.  Consequently, Plaintiff has failed to raise a fact question regarding the existence of an official policy as required for her failure to train and supervise claim against HISD.

With reference to Plaintiff's negligent hiring and retention claim, municipal liability generally does not lie for a single negligent hiring decision.  *See Bd. Of*

---

[7]     As an additional matter, as is discussed  in connection with Officer Alexander's Motion, Plaintiff has not presented evidence on each element of her excessive force claim and, therefore, has not shown that Officer Alexander violated anyone's constitutional rights.

*Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410-11 (1997) (cited in *Piotrowski*, 237 F.3d at 581).  Indeed, municipal liability for negligent hiring can be imposed only "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right . . .." *Id.* at 411.  Plaintiff's evidence in this case does not satisfy this high standard for liability against HISD.

Plaintiff has not cited the Court to any legal authorities recognizing a cause of action for "negligent retention" and this Court's research has revealed none.  Even if the Court were to accept that such a cause of action exists under § 1983, Plaintiff would be required to establish the existence of an "official policy" – either through a pattern of constitutional violations by Officer Alexander or otherwise – in order for there to be municipal liability under § 1983.  For the same reasons that Plaintiff's evidence fails to support the existence of an official policy for purposes of the failure to train and supervise claim, the evidence fails to establish an official policy which would support municipal liability on the negligent retention claim, if such a claim exists.

Plaintiff has failed to present evidence upon which liability could be imposed against HISD for failure to train and supervise Officer Alexander, or for negligent hiring and retention of him as an HISD officer.  Therefore, HISD's Motion is granted.

## III.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motions for Summary Judgment [Docs. # 43 and # 45] are **GRANTED**.  The Court will issue a separate final order.

SIGNED at Houston, Texas, this **5th** of **April, 2006**.

Nancy F. Atlas
United States District Judge